W. A. BOUTELLE *v.* WESTCHESTER FIRE INSURANCE COMPANY.

*Evidence. Practice. Contract for Insurance. Stipulation as to Ownership of Property Insured, and as to Overvaluation.*

In assumpsit on a policy of insurance insuring a quantity of hulless oats, plaintiff, for the purpose of showing the knowledge of the agent who issued the policy, of the situation and amount of the oats, introduced as a witness one who worked for plaintiff on the premises where the oats were stored, and sought to prove by him a conversation that he had in the store-house, with the general agent of another insurance company in which the oats were also insured, while defendant's agent, with whom the general agent came, and by whom he was introduced to witness, sat in his carriage outside the building. The conversation was in regard to the sit-

uation of the oats and the way in which the fires were managed. The testimony was received, and defendant excepted. *Held,* that as defendant had not, on those facts, made it appear that its agent did not hear the conversation, when if he had heard it the testimony would have been admissible, and as the testimony was immaterial, so that defendant was not prejudiced by its admission, the defendant took nothing by his exceptions.

The policy provided that if the interest of the assured in the property was any other than "the entire, unconditional, and sole ownership" thereof " for the use and benefit of the assured," it should be so represented to the company, and " so expressed in the written part of the policy," and that if it was not, the policy should be void. There was evidence tending to show that when the policy was issued plaintiff had agreed with W. that W. should have a share of the net profits of the sale of the oats, in consideration of which W. had agreed to perform certain services or procure them to be performed, and to sign a note with plaintiff, which plaintiff should take care of. *Held,* that the evidence did not tend to show that plaintiff's ownership was not for his own " use and benefit," within the meaning of that provision of the policy, and that the fact that it might prove that his ownership might also in the uncertain event of profit, be of advantage to W., made no difference.

The policy provided also that it should be void in case of " an overvaluation " of the property insured, either in the written application or otherwise. Defendant introduced evidence tending to show an overvaluation, and requested the court to charge that a substantial overvaluation would avoid the policy. The court refused so to charge, but charged that a misrepresentation, known by plaintiff to be such, and made with intent to deceive—a misrepresentation so substantial that defendant, had it known of it, would not have insured, would avoid the policy. *Held,* that the effect of an overvaluation was determined by the contract, and that a substantial overvaluation, i. e., an overvaluation such as would not ordinarily arise from a difference of opinion, whether fraudulent or otherwise, would avoid the policy, and that the charge was therefore erroneous.

ASSUMPSIT on a policy of insurance. Plea, the general issue, and trial by jury, September Term, 1877, REDFIELD, J., presiding.

The policy declared on was issued to the plaintiff on March 31, 1875, to assure him " against loss or damage by fire to the amount of $2,500 on his stock of hulless oats, for seed, contained in his detached frame store-house, situate on the east side of Elm street, opposite his residence in the village of Montpelier." Other insurance to the amount of $7,500 was thereby permitted, and it was thereby agreed that in case of a loss not more than $5 should be paid per bushel. The policy stipulated as follows: " If the interest of the assured be any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the assured  .  .  .  it must be so represented to

the company, and so expressed in the written part of this policy, otherwise the policy shall be void." The policy also contained a further stipulation that it should be void in case of " any false representation by the assured of the condition, situation, or occupancy of the property, or any omission to make known every fact material to the risk, or an overvaluation, or any misrepresentation whatever, either in a written application or otherwise."

The property insured was burned on April 21, 1875, while the policy was still in force.

It appeared that at the time the policy in question was issued three other policies for $2,500 each were issued to the plaintiff on the same property, one by the Kansas Insurance Company, of Leavenworth, one by the Globe Insurance Company, of Chicago, and one by the Planter's Insurance Company, of Memphis; that those policies were by their terms in force when the oats were burned, but that nothing had been paid on any of them, and that suits had been brought on them by the plaintiff, and were still pending. The plaintiff claimed to recover one fourth of the entire loss, but not more than $2,500, and the court charged the jury without objection, that that was the rule of damages, if the plaintiff was entitled to recover. The plaintiff offered evidence tending to show that the Kansas Insurance Company and the Globe Insurance Company were insolvent, to the admission of which the defendant objected, but it was admitted, to be ruled on thereafter. After the evidence was all in there was no evidence of the insolvency of either of said companies, and the court ruled that the evidence constituted no defence, and should have no bearing on the case ; to which the defendant excepted.

The defendant having introduced evidence tending to show that the policy in question was procured by fraud, misrepresentation and overvaluation of the property, the plaintiff introduced evidence tending to show that A. C. Brown, who was the agent of all of said companies and issued all of the four policies, resided within a short distance of the building in which the oats were stored, and was one of the first persons at the fire by which they were burned. The plaintiff, for the purpose, as he claimed, of showing Brown's knowledge of the situation and amount of the

property, introduced as a witness one Horace Mills, who worked for the plaintiff at the building where the oats were stored in March, 1875, who was permitted to testify to a conversation that he had some time in that month with the general agent of the Hudson Insurance Co., in which the oats were also then insured for $2,500, in regard to the situation of the oats and the way in which the fires were managed. He testified that the man came to the building with and was introduced by Brown, but that the conversation was had in the building while Brown remained in his carriage outside. It appeared from evidence introduced by the defendant, that the man with whom that conversation was had was not an agent for the defendant nor for any of the companies named except the Hudson, but that the policy of the Hudson was issued by Brown. The defendant seasonably objected to the testimony of Mills, but it was admitted; to which the defendant excepted.

The defendant introduced evidence tending to show that at the time of the application for the policy declared on, the plaintiff made a large and substantial overvaluation of the oats—both quantity and value.

The defendant also introduced evidence tending to show that one J. B. Woodward and one D. W. Ramsdell were part owners of the oats at the time the policy was issued, and that they were interested with the plaintiff in the business of buying and selling the oats, and were still so interested.

The plaintiff and Woodward testified that before the policy was issued they entered into a contract, which was still in force, by which it was agreed that Woodward should have one fourth of the net profits from the sale of the oats, in consideration of which he should give his time to the business, or furnish a man, and sign a note with the plaintiff for $1000 to put into the business, but that the plaintiff should take care of the note in any event. No interest of either Woodward or Ramsdell in the oats was referred to in the application for the policy nor in the policy itself.

The defendant requested the court to charge that if the plaintiff, when he made application for the policy in question, made a substantial overvaluation of the oats, the contract was void, and

the plaintiff could not recover ; that if Woodward or Ramsdell had an interest in the oats, or if the oats belonged to a copartnership of which the plaintiff was a partner, or if the plaintiff's interest was " any other than the entire, unconditional, and sole ownership of the property for the use and benefit " of the plaintiff, and the same was not represented to the defendant and expressed in the policy, the policy was void and the plaintiff could not recover—that if the property in the oats was in the plaintiff alone, yet, if he held the property for the " use and benefit " of the others or either of them, it should have been stated in the policy, there being no evidence of a waiver of the condition of the policy referring to that matter ; and that if the testimony of the plaintiff and Woodward was true, there was such a holding of the property for the use and benefit of Woodward as to render the policy void under that condition.

The court refused so to charge, but charged that if there was a substantial misrepresentation, by the plaintiff known to be false when he induced the policy—" if there was such misrepresentation, so substantial that the defendant would not have issued the policy had it known it, and the plaintiff did know it, and that was intentional and purposely conveyed and impressed on the defendant's agent to induce the policy, the contract would be void in its inception," but otherwise, as binding as any other contract. The court charged also that if either Woodward or Ramsdell was a joint owner, or if they were each interested in one fourth of the property, the plaintiff had no right to procure the insurance, but if the evidence proved only that the plaintiff agreed on certain considerations of credit or services to give them an interest in the net profits, if there should be any, that would not make them owners of the oats, nor partners—that a partner was a sharer of losses as well as gains, and that if that was all there was to the relation between the plaintiff and the others, it would not abrogate the policy.

To the refusal to charge as requested, and to the charge given, the defendant excepted.

*Heath & Carleton* and *R. S. Taft*, for the defendant.

The court erred in admitting the testimony of Mills. *Wing* v. *Chapman*, 49 Vt. 33.

The charge as to the effect of overvaluation of the property was erroneous. It is a conceded rule that a false representation as to value renders the policy void, even where the policy is silent on the subject of value. But at all events it should have that effect where the valuation is made material by express contract of the parties when they stipulate that the policy shall be void in case of overvaluation. *Catron* v. *Tenn. M. & F. Ins. Co.* 6 Humph. 176; *Carpenter* v. *American Ins. Co.* 1 Story, 57; *Davenport* v. *N. E. M. Fire Ins. Co.* 6 Cush. 340; *Wilbur* v. *The Bowditch M. F. Ins. Co.* 10 Cush. 446; *Amazon Ins. Co.* v. *Gilbert*, 27 Mich. 429, 441. Bliss Life Insurance, ss. 34, 35, 40, 41.

The charge as to the interest of Woodward and Ramsdell was also erroneous. The question was not, were the parties to the contract partners? but, did the plaintiff hold the property for the joint use and benefit of himself and either Woodward or Ramsdell or both of them?

*J. O. Livingston* and *J. A. Wing*, for the plaintiff.

The testimony of Mills was properly admitted. It was competent to show Brown's knowledge of the situation of the property.

The charge as to the effect of overvaluation was correct. An overvaluation of property insured, made in good faith—not fraudulent—will not avoid the policy. *Phillips* v. *Merrimack Fire Ins. Co.* 10 Cush. 350; ———— v. *Niagara Fire Ins. Co.* 16 Wisc. 523; *Laidlaw* v. *Liverpool & London & Globe Ins. Co.* 13 Grant, 377; *Bonhan* v. *Iowa Central Ins. Co.* 25 Iowa, 328; *Riach* v. *Niagara District Ins. Co.* 21 U. C. C. P. 464; *Williams* v. *Phœnix Ins. Co.* 61 Me. 67; *Brown* v. *Quincy Mutual Ins. Co.* 105 Mass. 396. And see 3 Bennett Fire Ins. Cas. 425, 653, and 5 Ib. 139, 181, 352, 407, where those cases are cited.

The charge as to Woodward and Ramsdell's interest in the oats was correct, and the defendant's request was wrong. Neither Woodward nor Ramsdell had any interest in the oats till sold,

2

and then only an interest in the profits. *Curry* v. *Com. Ins. Co.* 10 Pick. 535 ; *Bonham* v. *Iowa Central Ins. Co. supra ; Gould* v. *York Co. Mutual Fire Ins. Co.* 47 Me. 403 ; *Wyman* v *People's Equity Ins. Co.* 1 Allen, 301 ; *Gaylord* v. *Lamar Fire Ins. Co.* 40 Mo. 13 ; *Lee* v. *Howard Fire Ins. Co.* 11 Cush. 324 ; *Cox* v. *Ætna Ins. Co.* 29 Ind. 586. And see 1 Bennett Fire Ins. Cas. 333 ; 4 Ib. 448, 531, 789 ; 5 Ib. 111.

The opinion of the court was delivered by

Ross, J.  I.  It was competent for the plaintiff to show that A. C. Brown, the defendant's agent, who effected the insurance, had knowledge of the property insured and its situation.  The testimony of Mills was introduced for this purpose, and had a tendency to show that Brown had such knowledge.  But it appeared from Mills's testimony that on the occasion testified to, when Brown was present at the plaintiff's store-house, he was accompanied by a third person, an agent for the Hudson Insurance Company, which also had a policy on the same property.  This agent went into the store-house, while Brown remained outside.  The witness, against the exception of the defendant, was allowed to testify to a conversation he had with this agent while in the store-house.  It does not appear from the exceptions that Brown was so far removed from the witness at the time of the conversation that he could not have heard the same.  If the conversation was in his hearing, and so in his presence, it was admissible.  It is incumbent on the excepting party to show that the evidence objected to was clearly inadmissible.  This is not shown by the exceptions.  But if it should be held that by a fair construction of the exceptions Brown was so situated that he could not hear this conversation, we think it was not of that character that its immateriality to any of the issues disclosed by the exceptions, would warrant this court in reversing the case.  As this agent was not in any sense the agent of the defendant, what transpired between him and the witness when Brown was not present so as to hear the same, would not affect the defendant, and for that reason their conversation about the property would be inadmissible for immateriality.  It is not immateriality alone of testimony

which will warrant the court in reversing a case. It must also be of a character which would be likely to prejudice the excepting party in the decision of some of the issues involved in the trial of the case. For both of these reasons the defendant can take no advantage of this exception.

II. We do not think that the defendant was entitled to have the jury instructed in accordance with his second request, and that the instruction given upon this branch of the case was correct. The request and instruction relate to this provision in the policy. " If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured . . . it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy shall be void." The request assumes that, if by the performance on their part by Woodward and Ramsdell, they might reap some benefit and advantage from the sale of the hulless oats, although their ownership was entirely in the plaintiff, his ownership was not for his use and benefit. But we do not so regard it. By the performance of the contracts by Woodward and Ramsdell the plaintiff would reap, doubtless, as much if not greater benefit and advantage from his ownership of the oats than would they. His ownership was therefore for his own use and benefit. That it might also be of some advantage and benefit to Woodward and Ramsdell, and so prove an adequate compensation for the performance of their contracts in the sale of the oats, does not make the plaintiff's ownership of the oats for the use and benefit of Woodward and Ramsdell within the meaning of this clause of the policy. Under the instruction of the court the jury have found that the only use and benefit which the plaintiff's ownership of the oats was to Woodward and Ramsdell, was that it might operate to compensate them for the performance of their contracts with him in the sale of the oats. Whether it should so operate, depended upon whether a profit was derived from their sale. If a profit was derived from their sale, it operated to the use and benefit of the plaintiff directly and wholly, but only indirectly and by way of compensa-

tion to the use and benefit of Woodward and Ramsdell. There was no error in this respect in the charge or refusal to charge.

III.   The defendant requested the court to instruct the jury that if the plaintiff at the time of the application for the policy in question made a substantial overvaluation of the property, the contract was null and void, and the plaintiff was not entitled to recover. The court refused so to instruct the jury, but did instruct them, in substance, that in order for such overvaluation to avoid the policy, it must have been made by the plaintiff knowingly and intentionally, to induce the contract of insurance, and that the contract was made in reliance on such overvaluation. This is the usual instruction for the avoidance of any contract procured by fraud, and is applicable to this class of contracts as well as others, where the contract itself contains no stipulation in regard to the effect of overvaluation. In the cases cited by the plaintiff in support of the instruction, so far as they have been furnished for examination, with a single exception, the policies contained no express stipulation in regard to the effect of overvaluation. Some had no stipulation whatever bearing upon its effect in the contract, and others contained a stipulation that any misrepresentation by the assured *material to the risk* should avoid the policy. In regard to this latter class, it has been correctly held, that, in a policy not valued, that is, where by the terms of the policy the value of the property insured was not definitely determined, but left open to be determined by evidence *aliunde*, overvaluation by the assured was not material to the risk, and would not avoid the policy unless fraudulently made. The single exception is *Bonhan* v. *The Iowa Central Ins. Co.* 25 Iowa, 329, in which the policy contained a stipulation in regard to the effect of overvaluation like the one in the case at bar. The court were not agreed upon the ground of the decision, part of the court holding that on the facts found there was not an overvaluation by the assured, or that it did not appear that there was, and a part that it was not found that such overvaluation, if it existed, was fraudulent. So far as the decision is placed on the latter ground we think it is not supported by the better considered cases.

The policy in the case at bar contains the following stipulation: "And any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or an overvaluation, or any misrepresentation whatever either in a written application or otherwise," shall avoid the policy. Hence by the contract itself the effect of an overvaluation upon the policy is determined. The court cannot make contracts for the parties. Its province is to interpret and give effect to them as made. By this stipulation a substantial overvaluation of the property, that is, an overvaluation such as would not ordinarily arise from a difference of opinion, whether honestly or fraudulently made by the assured, avoids the policy. Such has been the holding of the courts in a large number of cases. *Smith* v. *Bowdish Mutual Fire Ins. Co.* 6 Cush. 448; *Vose* v. *Eagle Life & Health Ins. Co.* 6 Cush. 42; *Barrett* v. *Mutual Fire Ins. Co.* 7 Cush. 175; *Wilbur* v. *Bowdish Mutual Fire Ins. Co.* 10 Cush. 446; *Gould* v. *York Co. Mutual Fire Ins. Co.* 61 Me. 401; *Carpenter* v. *American Ins. Co.* 1 Story, 57; *Catron* v. *Tennessee Ins. Co.* 6 Humph. 176; *Amazon Ins. Co.* v. *Gilbert*, 27 Mich. 429. This holding is an application to this species of contracts of a well-settled principle of the law of contracts, that what the parties themselves have declared material and sufficient to render the contracts void, must be held material, and have such effect as the parties intended. There was no written application in this case. In what the claimed overvaluation consisted is not disclosed by the exceptions, and we make no ruling in regard to what would constitute an overvaluation in a policy of this kind, which insured only $2,500 on the property, and gave permission to the assured to obtain $7,500 additional insurance. Whether the quantity of oats was being added to day by day, or whether it was expected to be added to before the additional insurance should be obtained, is not disclosed by the policy or exceptions. As instruction was requested and given on this subject, we are to assume there was no evidence tending to show overvaluation by the plaintiff. In refusing this request and in the instruction given in answer to it, we think the court erred, and for this error the judgment of the County Court is reversed and the cause remanded.