### MICHAEL WALSH'S Adm'x., v. VERMONT MUTUAL FIRE INSURANCE COMPANY.

*Insurance. Notice of Loss. Title of Property Insured. Waiver of Proof of Loss. Agent.*

By the policy the assured was to give notice of the loss, signed and sworn to by himself ; but, at the time when notice should have been given, he was absent and out of this State, and the notice was signed and sworn to by his wife. The company received the proof, and rejected the claim, placing its refusal to pay upon a specific, substantive ground, not connected with the proof of loss ; namely, *that it did "not find the title satisfactory." Held,*

1. That there was a waiver of any defect in the preliminary proof.
2. Also, that the defendant, for the same reason, waived the defence of over-insurance ; especially so, as its agent knew, or ought to have known, the value of the property, and the misstatements, which were not fraudulent ; and it was affected with such agent's knowledge.

3. A recovery was dependent on the question whether the plaintiff owned the property insured. About fifteen years before, he had executed a deed in trust, and the deed was recorded ;  but there was no proof that it had ever been delivered, or that the trustee knew that it had been executed. The trustee never acted under the deed ; and all the parties treated the property the same as before the deed was made ; and it was held that the plaintiff could recover ; that, there being no delivery of the deed, the title had not passed.

4. The record of a deed is only prima facie evidence of its delivery.

5. In the absence of the owner of the property destroyed by fire, if his agent could not make the proof of loss, it is possible that equity might grant relief.

6. When an insurance company is affected with the knowledge of its agent.

ACTION, assumpsit on a policy of insurance.  Heard on the report of referees, at the September Term, 1881, VEAZEY, J., presiding.  Judgment was rendered on the report for the plaintiff to recover $1,368 ; and the defendant excepted.  The referees found :

The policy was issued to Michael Walsh, and the application therefor was signed by him, but, except the signature was mostly in the handwriting of John Cain, who was then an agent of the defendant company in soliciting insurance.  The plaintiff put in evidence a proof of loss signed by Mary Walsh, the wife of said Michael, and the same was received under objection and exception of the defendant, and was made under circumstances as follows : The said Michael and Mary were married in 1857, and occupied said house as a homestead at the time of the fire, but said Michael was in the habit of going away from home to be gone several months at a time, and at one time was gone two years ; and in his absence the said Mary had charge of matters at home, and acted as his agent in the management of the premises and in the general transaction of business about home.  At the time of the fire said Michael had gone to Colorado, and had been gone for some time, and it was not then known by his family where he then was, the facts in this respect being as stated in said proof of loss, and on this account his wife, the said Mary, made, by the assistance of her attorney, W. H. Smith, Esq., and signed and made oath to, said proof of loss, and the same was forwarded by said Smith with a letter of transmittal by him to the company on the 15th day of May, 1879, and it was received in due course.  Notice of the loss had been previously given.  In making and signing said proof, the said Mary assumed to act as the agent of her husband, and claims, as matter of law, under the facts and circumstances aforesaid, to have acted in this behalf within the scope of her authority as the agent of her husband.  Said Michael died before

returning home, but after the fire, and said Mary was appointed administratrix of his estate, and as such brought this suit.

The company through its agent and president investigated as to the cause of the fire, the amount and value of the property destroyed by it, the title to the property, and declined to pay the loss; but did not notify the plaintiff of any objection to the form and sufficiency of the proof of loss until it was made on the trial.

(The report at this point finds that the defendant paid the plaintiff for a former loss by fire, where the proof was made by the said Mary as in this case in the absence of her husband.) The referees further found:

That said Cain was the agent of the defendant company in soliciting said insurance and taking the application therefor; that thereafter said Michael built the house in question on the site of the former one, and obtained the policy of insurance thereon in this suit through said Cain as agent as aforesaid; that Cain examined the house inside and outside two or three times before taking the application, and talked with Michael about the cost of the house, and drew up the application for him; that said Cain had been a practical house carpenter and was a competent judge of the cost and value of such a house; that said Michael told said Cain that he had put into said house some $1,700 or $1,800, including his own labor, and Cain decided that the amount of insurance should be $1,200, being, as he then said, two-thirds the value.

The foregoing was the substance and result of the testimony on this point; and we find there was an over insurance on the house, and that said Michael and said Cain are both responsible for it. The expense of building was considerably greater in 1876, when this house was built than at the time of the loss in 1879, or at the date of the policy in 1878; but not enough to make up the difference between the value of the house in 1878 or 1879, and the amount represented by Michael to have been the cost in 1876. Both Michael and Cain are dead; and there was no evidence as to what took place between them when the application for insurance was taken, except the testimony of the plaintiff and the said application and policy. Upon this evidence we do not feel warranted in finding, as claimed by the defendant, that Michael falsely represented knowingly and purposely the cost of the house; but we find that the represented cost was more than it ought to have been by several hundred dollars; and that Cain ought to have known it.

The plaintiff claimed that the fact that Cain decided upon $1,200 as the proper amount of insurance to put upon the house under the two-thirds value rule of the company, he being a practical mechanic and competent judge, was evidence tending to show its actual value at the time of the insurance. Also that the company is concluded by that estimate of its agent. The last point is a question of law which we submit to the court. The first point becomes immaterial as we find the actual value of the house to have been $900, as before stated, giving all the weight, to which it is entitled, to this testimony as claimed.

We further find that November 11, 1863, the said Michael executed a deed of said premises in trust to R. Proctor, and this deed was put upon record on the same day, and the record title has remained in said Proctor ever since. This deed covered both the land and the personal property on the premises. We find upon evidence objected to by the defendant and taken subject to its exception, the following facts in regard to said conveyance : At the time said deed was executed said Michael and Mary were living in the house then standing on said premises, and were occupying the same as their homestead. They then had one child and have since had five others, and all are now living. Said Michael was in difficulty at the time and was in jail. An arrangement was made by which said deed was executed to said Proctor who had previously known the parties. Soon after this Michael went into the army, where he remained some time. During his absence said Mary and the family continued to occupy the premises, and also after his return, and he with them except when absent from home, as heretofore stated, until the time of the fire ; and since his decease said Mary has occupied said premises with her children, being both his widow and administratrix. It was not proved that said deed was actually delivered to Proctor. He never acted under it, never took possession of the real or personal property mentioned therein, never was on the place. It was never listed to him for taxation, and he had forgotten the existence of any such instrument until it was brought to his attention by reference to said record after said fire. He now recalls that some arrangement was made in regard to said Michael's property with a view to saving it to his wife and children ; and we find that he, Proctor, then consented to take the title for this purpose, but with no expectation of taking any charge or control of the property. It did not appear where the original deed is, if in existence. Said Proctor does not know of it among his papers. It did not appear whether said Michael had forgotten about this deed or not when he made the application for insurance, or why he omitted to refer

to it in his application. The real and personal property named in said deed has been treated by all parties ever since the execution thereof in precisely the same manner as before. The deed was executed for the purpose legally inferrible from the terms thereof in the light of the circumstances attending its execution as above stated.

. . . . . . .

We further find that the existence of said deed to Proctor, first became known to the defendant soon after the loss now in question. We further find upon evidence which was received subject to the objection and exception of the defendant, that subsequent to the loss in question, the plaintiff paid two assessments upon the premium note given when said policy was issued; one of $6.88, paid March 10, 1880, to cover the period from August 1, 1878, to August 1, 1879; and one of $4.73, paid October 11, 1880, to cover the period from August 1, 1879, to August 1, 1880. Soon after said last payment the defendant tendered back the amount received upon both assessments with interest, which tender was refused, but has been kept good. The company made said assessments and collected the same by mistake or through inadvertence, and as soon as the mistake was discovered the money was tendered back as above stated.

The following is an extract from the affidavit of loss:

"That the said Michael, my said husband, has for many years been accustomed from time to time to leave home for some mining region and be absent for months without one of us hearing from him. That last year, about March 4, 1878, he left for the West and has not been home since. That the last we heard from him he was in Golden City, in Colorado, in the early part of April, and wrote he was soon to leave that place for some other, which he did not name, and advised he would write home and let us know where he was before we need write him again. That immediately after our house burned we did write to him at Golden City aforesaid, where he was the last we heard from him, and have had no news from him since, and are wholly unable to state where he is or when I shall hear from him again, as he is not in the habit of writing often, sometimes not for months.

That said insured property was not otherwise insured except in said policy, and my said husband was the owner of all said property. That as his wife and agent, I do all the business, carry on the farm, &c., in his absence."

(Signed) " MARY WALSH," and sworn to by her.

Extract from a letter of the president of the defendant:

" In case of Walsh, I do not find the title satisfactory, there is noth-

ing in the papers, either in application or otherwise, to show the title, as the records do.    Yours, &c."

Extract from defendant's by-laws:

All persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company, and within thirty days after said loss to deliver in a particular account in detail of such loss or damage, signed with their own hands, and verified by their oath or affirmation, and also, if required, their books of account and other proper vouchers.    They shall also declare on oath whether any and what other insurance has been made on the same property, and whether they were the owners of the property at the time of the loss.    If there be any misrepresentation, fraud, or false swearing, the claimant shall forfeit all claim by virtue of his policy.

*James C. Barrett*, for the defendant.

The policy was void, because of a misrepresentation of the title.    It was not for the defendant to prove a delivery of the' deed.    15 Wend. 545.    It was not necessary to prove a delivery to *Proctor*.    A delivery to one of the beneficiaries would have been enough. ' 1 Johns. Ch. 240 ;   17 Johns. 577.   The record of the deed is proof of delivery.    3 Ohio St. 377 ;   101 Mass. 188 ; 1 Best. Ev. s. 274; 1 Green. Ev. s. 79.    The transaction, as set out by the referees, amounts in law to a delivery.    2 Washb. on Real Prop. p. 578; 5 B. & C. 671.    Even without the finding that the trustee " consented to take the title," the deed would not have failed.    His acceptance of the trust is to be presumed.    2 Washb. on Real Prop. 196.    A trust never fails for want of a trustee.    2 Washb. on Real Prop. 198, ¶ 18 ;  *Porter* v. *Bank of Rutland*, 19 Vt. 410 ; *Montpelier* v. *East Montpelier*, 29 Vt. 12 ; 4 Kent's Com. 311—note (e) ;   Adams' Eq. 118 ;  1 Perry on Trusts, 48 ;  Hill on Trustees, 334.

The value of the property was material.    6 Cush. 340 ; 3 Bennett's Cases, 443 ; 46 Me. 394; 4 Bennett's Cases, 443 ; 18 Md. 26 ;  Bates' Dig. 177, s. 25.    The insured was responsible for the misrepresentations.    How can it avail him, as against the company, that the agent for taking the application was also responsible ?    That it cannot is plain upon common principle.    And the authorities are so.    *Richardson* v. *Maine Ins. Co.*, 46 Me. 394 ;

4 Bennett's Cases, 442–3 ; *Ayeres* v. *Hartford F. Ins. Co.*, 17 Iowa, 176 ; 4 Bennett's Cases, 776 ; *American Ins Co.* v. *Gilbert*, 27 Mich. 429 ; *Lowell* v. *Middlesex Mut. F. Ins. Co.*, 8 Cush. 127. The representations being warranties, the agent's knowledge is unavailing. *Tebbetts* v. *Hamilton Mut. Ins. Co.*, 3 Allen, 569. Want of knowledge, or of recollection, no excuse. *Towne* v. *Fitchburg Mut. F. Ins. Co.*, 7 Allen, 51 ; *Wilbur* v. *Bowditch Mut. F. Ins. Co.*, 10 Cush. 446. Moreover, the insured was bound to know the scope of the agency. *White* v. *Langdon*, 30 Vt. 599; Wood on Fire Ins., p. 652, s. 397. And to prove it, Wood on Fire Ins., p. 649, s. 396 ; Ib. p. 663, s. 399. Distinction between powers of general and special agents. Ib. p. 652, s. 397. What the agent had no power to determine or control, he could have no power to waive. The contrary is preposterous. *Vose* v. *Eagle Life and Health Ins. Co.*, 6 Cush. 42, pp. 49–50 ; *Jennings* v. *Chenango Co. Mut. Ins. Co.*, 2 Denio, 75 ; *Tebbetts* v. *Hamilton Mut. Ins. Co.*, 3 Allen, 569 ; Wood on Ins. p. 636, s. 389, p. 646 ; Ib. p. 646, ss. 392–3. Where charter provides that the directors shall act, even the president cannot waive conditions of the policy. *Dawes* v. *The North River Ins Co.*, 7 Cow. 462. See 37 Me. 137 ; 4 Met. (Ky.) 9 ; 18 Wis. 387 ; 29 Iowa, 562 ; 4 Bennett's Cases, 756 ; 3 Hill, 508 ; 51 Barb. 208 ; 43 N. Y. 289.

*W. H. Smith* and *Prout & Walker*, for the plaintiff.

The deed was inoperative for want of delivery. *Elmore* v. *Marks*, 39 Vt. 538 ; Wood's Ins. 554 ; *Gilbert* v. *N. Am. Ins. Co.*, 23 Wend. 43 ; *Fisher* v. *Hall*, 41 N. Y. 416. No real misrepresentation of the title, *Hough* v. *Ins. Co.*, 29 Conn. 10 ; *Curry* v. *Ins. Co.*, 10 Pick. 535 ; *Allen* v. *Ins. Co.*, 5 Gray, 384–8–9.

If the proofs are defective the defendants waived all objections and are estopped from contesting claim upon this ground. Wood, 715–716, notes and cases cited. *Clark* v. *N. E. Mutual Ins. Co.*, 6 Cush. 342 ; *Underhill* v. *Agawam Ins. Co.*, 6 Cush. 440 ; *Blake* v. *Mutual Ins. Co.*, 12 Gray, 265 ; *Vos* v. *Robinson*, 9 Johns. 196 ; *Kernochan* v. *Ins. Co.*, 17 N. Y. 428–33 ; *Taylor* v. *Ins. Co.*, 9 How. 390. An agent may well make proofs in such a case. Wood on Ins. 694 and notes. *Pelkie* v. *Emerson*, 16

Vt. 653; *Meader* v. *Page*, 39 Vt. 306; *Church* v. *Langdon*, 10 Wend. 79.

Defendant received like proofs by this wife and made payments of the losses. Bigelow on Estoppel, 454.

The opinion of the court was delivered by

TAFT, J. This is an action to recover for a loss by fire, under a policy of insurance issued by the defendant, dated the 13th of February, 1878. The property was destroyed by fire on the 28th day of April, 1879. Several objections are now urged by the defendant against a recovery.

I. That the proof of loss was not signed by the assured's own hand, and verified by his oath. The proof of loss was furnished the company on the 17th day of May, 1879, signed and sworn to by the wife of the assured. It was the duty of the defendant if liable, to adjust the same within three months from that date. Within that time, on the 18th day of July, the plaintiff was notified, in effect, that the claim was not allowed, as the defendant did " not find the title satisfactory," and making no objection as to the defects in the proof of loss that are now complained of. We think that the reception of the proof of loss and placing their refusal to pay upon a specific, substantive ground, not connected with the proof of loss, and having before that accepted similar proofs from the plaintiff in a like case, was in fact a waiver of any defect in the preliminary proof. We think in this case, upon the facts reported, that it should be so held ; that as a matter of fact they did waive any defect in the statement. It is law in this State that a company has the right to reject a claim for a loss giving to the assured no reason therefor, and defend upon any and all grounds that would defeat a recovery ; or, in other words, the rejection of a claim without assigning any reason, is not a waiver, as matter of law, of any of their rights. *Spooner* v. *Ins. Co.*, 53 Vt. 156. The company has power to waive the production of the proofs ; and it is always a question of fact to be submitted to the triers whether it did do so. In the case cited to there was no evidence tending to show that the com

pany did waive the defect in the statement; and, therefore, it was error for the court below to hold that there was a waiver. There are cases that hold that the assured in some instances, is excused from furnishing any statement, as where the company deny the existence of the contract. *Tayloe* v. *Ins. Co.*, 9 How. 390. The fact that the assured was not in the country, and probably could not have furnished the statement, had it been called for, does not affect the question; for if an agent could not make the proof, which we do not decide, and there was no remedy at law, it is possible that equity might grant suitable relief, as in case of accident.

II. The referees find that the value of the property was not truly represented to the company; that it was over-estimated, and in consequence thereof, over-insured. The assured agreed that the application was a true exposition of the value of the property; and (it being a matter material to the risk) if it was misrepresented, the policy should be void. This is a matter of contract, made by the parties; and unless its effect is obviated by what subsequently took place, rendered the policy null. *Boutelle* v. *Westchester Fire Ins. Co.*, 51 Vt. 4. The agent of the company knew these facts as to value, or ought to have known them; and so they are affected with like knowledge. The defence was matter of contract, not one by force of the charter; and the company had power to waive it; and we think the defence must be as matter of fact held waived. They knowingly over-insured the property; and not repudiating the contract because it was over-insured, placed their refusal to pay upon the distinct ground that the title was defective, and upon that ground alone. They levied assessments upon the policy both before and after the loss, and as there was no fraud on the part of the plaintiff, he was misled by the defendant into the belief that his policy was valid. The assessments levied after the loss, were not made in ignorance, or through mistake of any fact, but inadvertently, and as it would seem from mere negligence. The facts reported amount to a waiver of this defence.

III. The charter of the defendant provides that the policy should be void unless the true title of the assured, in case the assured has a less estate than a title in fee simple, was expressed therein, and, in the application ; and the applicant agreed in the application that in case any matter material to the risk was not fully stated, or in any material thing was misrepresented, the policy should be void. The state of the title was material, and should have been correctly stated. Under the above provision of the charter, and agreement in the application, the defendant insists that the policy was void for the reason that the title was not truly expressed in the policy and application. On the 11th day of November, 1863, the assured was the owner of the property, and on that day conveyed it to one Proctor in trust. There was no proof before the referees that the deed was ever delivered, or that Proctor ever knew it was executed, although he consented that it might be. He never acted under the deed ; never took possession of the property conveyed by it ; never saw it, and it had never been set in the list to him for taxation, and he never expected to take control of it ; and all parties had treated it as the property of the insured, or as the referees say in " precisely the same manner as before " the execution of the deed. The controlling question in this case is, whether the deed ever became operative by a delivery. Before we declare the contract void, this fact should plainly appear. There is no evidence in the case tending to show it, save the fact that it is on record, and this is only *prima facie* evidence of a delivery which may be rebutted. A·deed does not take effect until it is delivered. In *Elmore* v. *Marks et al.*, 39 Vt. 539, PIERPOINT, Ch. J., says : " What amounts to a delivery is a question that has been much discussed, each case standing mainly upon its own peculiar facts ; but all the authorities seem to agree that to constitute a delivery, the grantor must ·part with the custody and control of the instrument, permanently, with the intention of having it take effect as a transfer of the title, and must part with his right to the instrument, as well as with the possession. So long as he retains the control of the deed, he retains the title." Applying this rule to the case at bar,

we think that upon an examination of the facts reported, the presumption arising from the record is fully rebutted, and that the requisite facts to constitute a valid delivery as stated above, are wholly wanting. The facts that Proctor never knew that the deed was executed ; that he never acted under it, and never expected to ; and that all the parties treated the property as though the deed had never been executed, and Walsh continued to occupy it as his own, and claimed it as his own, for a long series of years ; that the deed is not among the papers of Proctor, conclusively rebut the *prima facie* presumption of delivery. The facts reported fail to show that the assured ever parted with the custody and control of the instrument, permanently, with the intention of having it take effect as a transfer of the title, or that he ever parted with his right to, or possession of the instrument, which is the rule so ably laid down by the late learned Chief Justice ; the defence as to the defect in the title fails. This disposes of the questions raised in the argument. We make no reference to the questions, of the effect of the homestead upon the deed to Proctor, and waiver by defendant by having assessed the policy.

Judgment affirmed.

REDFIELD, J., being an officer of the company, did not sit.