STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| City of Burlington,<br>    Plaintiff, | } } } } | |
| v. | } } | Docket No. 155-8-09 Vtec |
| Diana L. and Ronald N. Charboneau,<br>    Defendants. | } } } | |

Decision and Order on Cross-Motions for Summary Judgment

This case is an enforcement proceeding brought under 24 V.S.A. §§ 4451 and 4452 by Plaintiff City of Burlington against Defendants Diana L. and Ronald N. Charboneau (Defendants) for alleged violations of the City of Burlington Comprehensive Development Ordinance (Ordinance) at property located at 66 Village Green. Plaintiff City is represented by Kimberlee J. Sturtevant, Esq.; Defendants are now represented by Marc E. Weiner, Esq.

The complaint that instituted this enforcement action was served on Defendants on August 11, 2009. Defendants did not answer the complaint within twenty days of service, as required by V.R.C.P. 12(a)(1)(A), and therefore the City moved for default. On November 5, 2009, this Court granted the City's motion for default judgment.[1] The Court's November 5 order stated that "[i]f Defendants have transferred the property, they may move to vacate this order and should be prepared to file proof that the

---

[1] An affidavit submitted in connection with the motion for default judgment revealed that Defendants had been represented in prior property transactions related to 66 Village Green property by Attorney Weiner. Although no answer had been filed and no appearance was entered on behalf of Defendants at that time by, the Court provided Attorney Weiner with a courtesy copy of the default order.

1

property is owned by others."  After Defendants filed proof that a contract and deed had been executed in 1996, which purportedly transferred ownership of the 66 Village Green property to a Mr. John C. Kirby, the Court granted Defendants' motion to set aside the entry of default and reopened this enforcement proceeding.

The parties have now each moved for summary judgment. When "both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48, 582 A.2d 123, 125 (1990)).

In its motion, Plaintiff City asks the Court to establish the existence of the violations, arguing that Defendants were the "record owners" of the 66 Village Green property at the time of the violations and that because they did not appeal the Notices of Violation the violations became final.  Defendants counter by asking the Court to dismiss the enforcement proceeding, arguing that they are not responsible for the violations as they "did not control the property, occupy the property, [or] permit[] or authorize anyone to use the property." Defendants' Motion for Summary Judgment, at 2–3 (Feb. 8, 2010).  Defendants also request that John C. Kirby be joined as a necessary party, although they have not sought to interplead him under V.R.C.P. 22 and V.R.E.C.P. 3.

Facts stated in this decision are undisputed unless otherwise noted.  In responding to Defendants' Statement of Undisputed Material Facts, the City agreed that facts 1, 2, 3, 6, and 7 were "undisputed," but qualified its response regarding facts 4, 5, 8, and 9.  As to facts 4, 5, 8, and 9, the City stated that those facts were undisputed "[f]or purposes of responding to the pending motions [for summary judgment] in this matter only and without prejudice to the City's ability to dispute this purported fact at trial." See City's Response to Defendants' Statement of Undisputed Material Facts (City's

2

Response to Defendants' SOF), ¶¶ 4, 5, 8, 9. The "undisputed" facts subject to this disclaimer are specifically noted in this decision.

Despite the City's disclaimer, under V.R.C.P. 56, in response to Defendants' statement of undisputed material facts, the City was required to file "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." V.R.C.P. 56(c)(2). Rule 56(c)(2) provides that all of the facts in the moving party's statement "will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id. Thus, Rule 56 does not provide for a party to state that certain facts are "undisputed" for purposes of summary judgment while still reserving the right to "dispute" them at trial. Rather, the City must either admit that the stated fact is "undisputed," or it must dispute the fact and "contend[] that there exists a genuine issue to be tried" as to those facts. If the City does contend that such facts are in dispute, it "may not rest upon mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue through affidavits." Nature Conservancy v. Cantin, No. 2007-323, slip op. at 3 (Vt. Apr. 2009) (unpublished mem.) (quoting V.R.C.P. 56(e)). Rule 56 requires such supporting affidavits to "set forth such facts as would be admissible in evidence." V.R.C.P. 56(e).

Factual and Procedural History

Defendants are the former owners of a parcel of property located at 66 Village Green in the City of Burlington. Defendant Ronald Charboneau acquired an ownership interest in the property in 1983, and in 1993 conveyed the property to the joint ownership of himself and his wife Diane. See Warranty Deed, at 1 (Apr. 5, 1996).

On April 5, 1996, Defendants entered into a "Contract for Deed" with John C. Kirby, in which Defendants "agree[d] to sell, convey, transfer, assign, and deliver" the 66 Village Green property to John C. Kirby. Contract for Deed, at 1, ¶ 1. Under the

3

Contract for Deed, title to the property remained in Defendants' names until the full purchase price was paid and the contract was fully complied with. Despite this delay in the transfer of title, the contract provided that John C. Kirby was immediately "entitled to exclusive use and possession of the [property] in the same manner, and to the same extent, as he would have had he received title" on the day on which the Contract for Deed was executed. Id. at 4, ¶ 5.

On the same day, April 5, 1996, Defendants also executed a Warranty Deed conveying the property to John C. Kirby.[2] Under the terms of the Contract for Deed, the Warranty Deed was to be held in escrow until "proof of payment in full" was delivered to the escrow agent, at which time the Warranty Deed was to be delivered by the escrow agent to John C. Kirby. Id. at 2, 4, ¶¶ 3, 8. The contract appointed Attorney Marc E. Weiner, who is representing Defendants in the present proceeding, as escrow agent for the transaction. Id. at 4, ¶ 8.

After the parties entered into the Contract for Deed, Defendants state that John C. Kirby "took possession of the property," but that "[t]itle remained in [their] names until John Kirby was able to refinance the property in his own name." Charboneau Aff. ¶ 4. For the purposes of the pending motions, the City does not dispute that, pursuant to the terms of the Contract for Deed, John C. Kirby took control of the property on April 5, 1996, nor does the City dispute that, from April 5, 1996, to the present, "Defendants were not in control of the [66 Village Green] property" and have not "exercised any ownership rights in the property whatsoever." Defendants' Statement of Undisputed Material Facts, at ¶¶ 4, 5 [hereinafter Defendants' SOF].

---

[2] Defendants also executed a Mortgage Deed on April 5, 1996, naming Defendants as mortgagors and John C. Kirby as mortgagee, as provided in ¶ 15 of the Contract for Deed, to "secure [John C. Kirby]'s interest" in the property. Contract for Deed, at 6, ¶ 16.

As of April 18, 2003, John C. Kirby had complied with all conditions of the Contract for Deed, when he was able to pay off the mortgage given by Defendants in 1996. Charboneau Aff. ¶ 5; see also Mortgage Deed and Discharge Document, at 4 (Apr. 18, 2003) (stating that John C. Kirby "does hereby release and discharge in full a certain mortgage from [Defendants] to John C. Kirby dated April 5, 1996"). Material facts are in dispute, or at least have not been provided to the Court, regarding the location of the original Warranty Deed after it was executed in 1996, including the circumstances of delivery of the original Warranty Deed to the escrow agent, its location as of 2003, or where and by whom the original deed was eventually located in November of 2009, prior to its recording by John C. Kirby's mother, Leah Racine, who is also Diana L. Charboneau's cousin. Charboneau Aff. ¶ 6 (Nov. 12, 2009).

In May of 2007, more than eleven years after the Warranty Deed was signed, a City of Burlington Code Enforcement Officer inspected the property and discovered several Ordinance violations, including the existence of an unpermitted canvas storage structure and illegal parking and outdoor storage on the property. Francis Aff. ¶ 2 (Aug. 4, 2009); see also City's Complaint and Motion for Preliminary and Permanent Injunctive Relief, ¶ 6 (Aug. 4, 2009) [hereinafter Complaint]. During the inspection, the Code Enforcement Officer spoke to the tenant of the property, Jay Kirby, who said he would cure the violations within seven days. Francis Aff. ¶ 2; Complaint, ¶ 2. The Code Enforcement Officer conducted two follow-up visits on May 31 and June 19, 2007; during both visits, the Officer observed that the Ordinance violations had not been cured. Francis Aff. ¶¶ 3, 4; Complaint, ¶¶ 7–8.

On June 19, 2007, a formal Notice of Violation was sent both by certified mail and by first class mail to Jay Kirby and to Defendant Diana Charboneau. Francis Aff. ¶ 5; Complaint, ¶ 9. The City has not provided a copy of this Notice of Violation or of the certified mail receipts, and has not stated to what address the Notice of Violation was mailed to the Charboneaus. The certified mail copy of the Notice of Violation mailed to

5

Jay Kirby was received by him on June 26, 2007. Material facts are in dispute as to whether the first-class mail copy of the Notice of Violation mailed to Defendant Diana Charboneau was received by her; however, the certified mail copy was not claimed by her. Francis Aff. ¶ 5; Complaint, ¶ 9. No appeal was filed from the 2007 Notice of Violation, and it became final at least as to Jay Kirby. 24 V.S.A. §4472(d).

A second Notice of Violation was sent both by certified mail and by first class mail to Defendants on August 5, 2008. The City has not provided a copy of this Notice of Violation or of the certified mail receipt, and has not stated to what address this Notice of Violation was mailed. The certified mail copy was claimed on August 27, 2008, but material facts have not been provided to show who signed for the certified mail. Id. ¶ 11. No appeal was filed from the 2008 Notice of Violation, and it may have become final as to the existence of the violations, depending on the circumstances of notice of it to Defendants. 24 V.S.A. §4472(d); see also, e.g, Town of Randolph v. Estate of White, 166 Vt. 280, 283 (1997) (stating that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950))).

Defendants' answer suggests that Defendants became aware of both Notices of Violation at some time, as they admit as to both Notices of Violation that they "ignored the notices of violation as they had conveyed this property to John Kirby years before and[,] to the best of their knowledge, had no legal interest in the premises, including the right to enter [onto the property] or abate any violations." Defendants' Answer to Complaint, at 2, ¶¶ 3 (Nov. 9, 2009) [hereinafter Answer]. For the purposes of the pending motions, the City does not dispute the fact that "[t]here is no evidence that Defendants participated in or contributed to any of the violations set forth in Plaintiff's complaint." Defendants' SOF, at ¶ 8.

6

As of August 4, 2009, the date on which the most recent inspection of the property occurred, the Ordinance violations regarding the canvas storage structure and the exterior storage remained in existence on the property. Francis Aff. ¶ 19; Complaint, ¶ 13. On August 4, 2009, Plaintiff City filed the complaint in this enforcement proceeding, asking the Court to order the violations to be corrected, pursuant to 24 V.S.A. § 4452, and asking for a fine to be imposed on Defendants, pursuant to 24 V.S.A. § 4451.[3]

After their motion to vacate the entry of default had been granted, Defendants filed their answer to the complaint on November 9, 2009. As one of their affirmative defenses, Defendants stated that "[b]ecause [they] did not create the zoning violations . . . and because [they] have no legal right to enter upon the lands and premises . . . they cannot abate, remove or correct the violations which are set forth in Plaintiff's complaint." Answer, at 2, ¶ 10. Also on November 9, 2009, the 1996 Warranty Deed was recorded in the City's land records by John C. Kirby's mother. Charboneau Aff. ¶ 7.

Effect of Defendants' Execution of the 1996 Deed and Failure to Record

In its motion for summary judgment, Plaintiff City asks the Court to establish the existence of the Ordinance violations, arguing that Defendants were the "record owners" of the 66 Village Green property until November 9, 2009, and that, because they did not appeal the Notices of Violation, the existence of the violations has become final and cannot be contested in this enforcement action. In their cross-motion, Defendants ask this Court to dismiss the enforcement proceeding because they "did not

_____

[3] See 24 V.S.A. § 4451 (authorizing the imposition of up to $100 per violation of a zoning bylaw, and establishing that each day that such a violation continues is a separate offense); id. § 4452 (authorizing municipalities to bring an enforcement action in environmental court "to prevent, restrain, correct, or abate" a violation of a zoning ordinance).

control the property, occupy the property, permit, or authorize anyone to use the property" after April 5, 1996, and therefore cannot be held liable for violations that occurred on the property after that date.

Although Plaintiff City acknowledges that Defendants executed both the Contract for Deed and the Warranty Deed in 1996, which purportedly transferred the property to John C. Kirby, it argues that Defendants are nevertheless liable because they were the "owners of record" of the property until the Warranty Deed was actually recorded in November 2009. In effect, the City is asking the Court to hold that if the purchaser of property fails to record a deed, the sellers remain responsible as "owners" of the property for any zoning violations that took place on the property prior to recordation.

Contrary to the City's theory, however, an unrecorded deed still operates to transfer the seller's ownership in the property to the buyer. See, e.g., In re Galvin, 120 B.R. 767, 770 (Bankr. D. Vt. 1990) (stating that the "failure to record under [the recording statute] still operates to pass the assignor's interest to the assignee"); Duhamel v. Donnelly, No. 207-227, slip op. at 2 (Vt. Dec. 2007) (unpublished mem.) (holding that a failure to record, in and of itself, did not affect the transfer of ownership from the seller to the buyer); Spaulding v. H. E. Fletcher Co., 124 Vt. 318, 323 (1964) ("Even if not recorded an assignment operates to pass the assignor's interest to the assignee.").[4]

Therefore, if and when Defendants transferred ownership of the property to John C. Kirby through a validly executed (albeit unrecorded) deed, they no longer had an

---

[4] See also In re Estate of Deschenes, 818 A.2d 1026, 1030 (Me. 2003) ("The want of record of a deed does not render the instrument void." (quoting Gatchell v. Gatchell, 143 A. 169, 170 (1928))); 66 Am. Jur. 2d Records and Recording Laws § 136 (2010) (stating that "[s]ince recording is required for the protection of third persons, the recording statutes do not change the rule that an unrecorded deed, mortgage, lease, or other instrument affecting the title to land is valid as between the parties thereto"); id. § 82 (stating that recording statutes "give no substantive rights in themselves").

8

interest in the property and they cannot be held liable for zoning violations that occurred after the transfer of ownership. See, e.g., <u>Smith v. Monmaney</u>, 127 Vt. 585, 592–93 (1969) ("Following a transfer of ownership and possession of real estate to a vendee without reservation, a vendor of realty is in no position to control the use thereof" and the "vendor divests himself of title and all right of possession or of reentry for repairs or for any other purpose."). If ownership was transferred from Defendants to John C. Kirby when the deed was signed in 1996, or when the contract was fulfilled in 2003, or at any time prior to the Notices of Violation, then Defendants cannot be held responsible for the violations under the Ordinance unless they "knowingly" participated in the violations, as provided in § 2.7.6 of the Ordinance, discussed further below.

However, the materials submitted in connection with the parties' motions fail to establish the material fact of when ownership of the property was considered to be transferred from Defendants to John C. Kirby through actual or imputed "delivery" of a validly executed deed. It is well-settled under Vermont law that a "deed does not take effect until it is delivered." <u>Spero v. Bove</u>, 116 Vt. 76, 86 (1950).[5] In order "[t]o constitute a delivery of a deed the grantor must part with the custody and control of the instrument, permanently, with the intention of having it take effect as a transfer of the title, and must part with his right to the instrument as well as with the possession." <u>Rich v. Wry</u>, 110 Vt. 307, 307 (1939) (citing <u>Elmore v. Marks</u>, 39 Vt. 538, 541 (1867); <u>Walsh's Adm'x v. Vt. Mutual Fire Ins. Co.</u>, 54 Vt. 351, 360 (1882)).

But although "delivery is essential to the validity of a deed, it is not necessary that there should be an actual manual delivery" from seller to buyer. <u>Id</u>. Delivery is

---

[5] See also <u>Fisher v. Poole</u>, 142 Vt. 162, 167 (1982) (stating that a deed does not take effect until it has been delivered to the grantee); 23 Am. Jur. 2d <u>Deeds</u> § 103 (2010) ("[I]t is the universal rule . . . that a deed, to be operative as a transfer of the ownership of land or an interest or estate therein, must be delivered; it is delivery that gives the instrument force and effect.").

9

sufficient, absent a manual delivery from seller to buyer, if the deed "is so disposed of as to evince clearly the intention of the parties that it should take effect as a conveyance."   Id. (citing Orr v. Clark, 62 Vt. 136, 146 (1890); Gorham's Adm'r v. Meacham's Adm'r, 63 Vt. 231, 233 (1891)); see also Dwinell v. Bliss, 58 Vt. 353, 254 (1886) ("Delivery may either be actual,—that is, by doing something and saying nothing; or verbal,—that is, by saying something and doing nothing; or it may be both." (citation and quotations omitted)).

For example, delivery of the deed by the seller to a third party in escrow, who will then deliver the deed to the buyer, can constitute delivery as long as the seller intended for that action to operate as a conveyance.  See, e.g., 23 Am. Jur. 2d Deeds § 119 ("The delivery of a deed to a third person with instructions to pass it on to the grantee, and without any reservation by the grantor of a right to recall it, is sufficient in law and effects a complete transfer of the title to the property.").  However, if a deed is deposited with a third person in escrow to be delivered only after the satisfaction or performance of certain conditions, then the deed will not take effect until such conditions have been fulfilled.  See Dunlevy v. Fenton, 80 Vt. 505, 505 (1908) ("When a deed is deposited with a third person, to be delivered to the grantee only upon the performance of some condition precedent, and the depositary delivers it without the performance of the condition, there is no delivery in law, and the deed is without effect." (citation omitted)); 23 Am. Jur. 2d Deeds § 119 ("When a deed is placed in the hands of a third person to hold until a certain act is performed, no title passes until that act is performed.").

Upon the fulfillment of all conditions, however, it remains unsettled under Vermont law whether such a deed becomes operative only upon actual delivery by the escrow agent to the grantee, or whether it automatically takes effect upon the fulfillment of all conditions.  See 28 Am. Jur. 2d Escrow § 119 ("Although some authorities hold that an instrument held in escrow, such as a deed, does not take effect

10

and transfer title until it is delivered to the grantee or obligee, others hold that upon . . . performance of the condition upon which the delivery must be made by the depositary to the grantee or obligee, the title to the instrument ipso facto vests in the grantee or obligee without an actual delivery.").

In the present case, the 1996 Contract for Deed states that "[u]pon payment of the purchase price . . . and upon the full and complete performance of all of the terms and conditions herein, SELLER shall, pursuant to the terms of paragraph 8 herein, deliver to the BUYER a good and sufficient Warranty Deed conveying the [property] . . . ." Contract for Deed, at 2, ¶ 3. Paragraph 8 of the contract, which spells out the precise terms for delivery of the deed, states that the warranty deed "shall be held in escrow by Marc E. Weiner, as escrow agent, until such time as proof of payment in full . . . has been delivered to said escrow agent," at which time he was to deliver the deed to John C. Kirby. Id. at 4, ¶ 8. According to the terms of the Contract for Deed, therefore, the method of delivery was established. However, material facts have not been provided regarding whether the original warranty deed was relinquished by Defendants and held by the escrow agent as of its signing in 1996, or regarding what, if anything, occurred as of 2003 when the contract's conditions were fulfilled, or where the original warranty deed was located at that time. The parties do not dispute the fact that, as of 2003, the original deed was not recorded. Charboneau Aff. ¶ 5; see also Answer, at 2, ¶ 5 ("In connection with a refinance by John Kirby, the title was searched and Mr. Kirby's attorney found the original deed was never recorded."). It was not until after the current enforcement action was instituted that the original deed was "located and delivered to John Kirby's mother Leah Racine," who recorded the deed on November 9, 2009. Charboneau Aff. ¶¶ 6, 7.

Therefore, as to the issue of when the 1996 deed took effect, summary judgment must be denied at the present time as material facts are in dispute, or at least have not been provided to the Court, as to when the "delivery" of the deed was accomplished.

The parties will be given an opportunity to present further affidavits and legal memoranda on this issue.

<u>Whether Charboneaus are Proper Defendants under the Ordinance</u>

Regardless of when the deed to the 66 Village Green property was in fact transferred to John C. Kirby, the City may only maintain this action against Defendants if they are proper defendants under the Ordinance.

Two sections of the ordinance are relevant to the task of determining those who may be held responsible for violations of the Ordinance. First, the "General Provisions" section of the Ordinance states:

> Except as otherwise provided in this ordinance, no person may use or occupy any land or buildings or authorize or permit the use or occupancy of land or buildings <u>under his or her control</u> except in accordance with the applicable provisions of this ordinance. For purposes of this section, the "use" or "occupancy" of a building or land relates to anything and everything that is done to, on, or in that building or land.

Ordinance § 1.1.7 (emphasis added). Under this section, persons who control land or buildings must comply with the Ordinance.

However, control of land or buildings is not necessarily required to hold a person responsible for an Ordinance violation. Rather, § 2.7.6 of the Ordinance, which falls under the "Enforcement" chapter, delineates those persons who can be held responsible for violations of the provisions of the Ordinance:

> The owner, tenant, or occupant of any structure or land or part thereof who participates in, assists, directs, creates, or maintains any situation that is contrary to the requirements of this ordinance, and any architect, builder, contractor, agent, or other person who knowingly participates in, assists, directs, creates, or maintains any situation that is contrary to the requirements of this ordinance, may be held responsible for the violation and suffer the penalties and be subject to the remedies herein provided.

Ordinance § 2.7.6.[6]  Under this section, an owner (or tenant or occupant) of property cannot be held responsible for a violation of the Ordinance unless that person "participates in, assists, directs, creates, or maintains" a situation that violates the Ordinance.  In addition, any person other than an owner (or tenant or occupant) must "knowingly" participate in, assist, direct, create or maintain a violation in order to be held responsible for that violation.  If the City cannot show that Defendants fall within either portion of § 2.7.6, Defendants cannot be held responsible for the violations.

For the purposes of the present motions, the City does not dispute that, from April 5, 1996, to the present, "Defendants were not in control of the [66 Village Green] property" and have not "exercised any ownership rights in the property whatsoever." Defendants' SOF, at ¶¶ 4, 5. The City also does not dispute, for the purposes of the present motions, that "[t]here is no evidence that Defendants participated in or contributed to any of the violations set forth in Plaintiff's complaint."  Defendants' SOF, at ¶ 8.

Because each party is "entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion [for summary judgment] is being judged," Fairpoint Commc'ns, 2009 VT 59, ¶ 5, and because the City has attempted to "reserve the right to contest these purported facts at trial," the Court will give the City ten days to comply with V.R.C.P. 56(c) and (e) by either coming forward with affidavits or other evidence to dispute those facts, or by stating that such facts are indeed undisputed.  If it is undisputed that Defendants did not participate in, assist, direct, create, or maintain any violation on the property, which is required under the first portion of § 2.7.6 to hold them responsible for a violation even if they still had an ownership interest in the

_____

[6] Although the parties provided the Court with § 1.1.7 of the Ordinance, they only provided a portion of § 2.7.6.  The complete text of § 2.7.6 is found at: http://www.ci.burlington.vt.us/planning/zoning/zn_ordinance/burlington_vermont_zoning_ordinance_20090421.pdf.  The parties have not suggested that any earlier version of the zoning ordinance is applicable to the present case.

13

property, then summary judgment will be entered in favor of Defendants.  Similarly, under the second portion of § 2.7.6, if it is undisputed that the deed was "delivered" in 2003 when the contract conditions were fulfilled by John C. Kirby, or was "delivered" at any time prior to the Notices of Violation, then Defendants were no longer even the record owners of the property.  As the City does not assert that they "knowingly" participated in, assisted, directed, created, or maintained any violation on the property, which is required to hold them responsible for a violation under the second portion of § 2.7.6, then summary judgment will be entered in favor of Defendants.

Accordingly, on or before April 23, 2010, the City may provide affidavits or evidence in support of its contesting of any of Defendants' undisputed facts; otherwise, summary judgment will be entered in favor of Defendants effective on April 26, 2010.  If this matter is not concluded on that basis, then on or before May 3, 2010, Defendants may provide any additional affidavits or evidence pertaining to the issue of "delivery" of the deed, and may submit any additional memorandum regarding actual or imputed delivery of the deed, and on or before May 13, 2010, the City may submit any reply memorandum on that issue.

Done at Berlin, Vermont, this 13th day of April, 2010.

_____
Merideth Wright
Environmental Judge

14