## HELEN M. ORR *v.* HORACE CLARK ET AL.

*Delivery of deed.   Presumption against the spoliator.   Evidence.   Husband and wife.   Possession as notice of title.*

1. W. owning in fee the premises in dispute, died intestate, leaving two daughters and a husband surviving. The daughters agreed that the father should have the use during his lifetime, and at his death the survivor of them should take the fee. An instrument under seal to this effect was executed by the daughters and their husbands, and in the presence of all the parties given into the hands of the justice who drew it, for safe keeping. *Held*, a sufficient delivery.

2. Subsequently, with the consent of one daughter, this instrument was taken from the possession of the original custodian by the other. After the decease of the latter, her husband, one of the defendants, repeatedly acknowledged having it, but in his answer denied the existence of any such paper, and did not on trial produce it or account for its loss. *Held*, that his failure to produce the paper or account for its absence should be taken against him in receiving and weighing secondary evidence of its contents.

3. In such case evidence of the agreement and intention of the parties at the time of its execution, and the testimony of witnesses who were present and casually knew of its contents, may be received.

4. Both the daughters having deceased and both the husbands being still alive, *held*, that the father of the oratrix was a competent witness in her behalf as to the agreement and the contents of the written instrument, which he had executed with his wife, through whom the oratrix claimed title.

5. The defendant having testified to the contents of a letter from the oratrix to him, without producing it, the oratrix was properly allowed to state, in rebuttal, her version of the contents of the same letter, without showing its loss.

Orr *v.* Clark et al.

6. Having testified, on cross-examination, that she had been told that her grandmother had willed the premises in question to her mother and the wife of the defendant Clark, the oratrix might state, on redirect examination, the sources of her information and the circumstances under which she obtained it.

7. Under the original agreement between the daughters, their father was to and did, during the remainder of his life, occupy the premises. *Held,* that his declarations made in the course of such occupancy were not admissible to show the state of the title.

8. The defendant Hulet claimed title to an undivided half of the premises under deed from Clark, the husband and heir of one of the daughters. When he took his deed the oratrix was in the sole occupancy. *Held,* that the fact of such occupation should have put the defendant upon inquiry, and that he had no greater equity than his grantor.

9. *Held,* further, that the oratrix was entitled to a decree for the undisturbed possession of the premises, and for such conveyances from the defendants as would perfect her record title thereto.

Bill in chancery, brought by the oratrix to establish her title to a certain parcel of land. Heard on bill, answer and master's report at the September Term, 1889. POWERS, Chancellor, dismissed the bill with costs. The oratrix appeals.

The nature of the case sufficiently appears in the opinion.

The oratrix, by her bill, prayed :

1st. That the defendants be enjoined from interfering· with her possession of the premises in dispute.

2d. That they be decreed to produce the original written instrument, whose terms were in controversy, or, if not in their possession, to account for the loss of it.

3d. That they be compelled to make such other conveyances as might be necessary to carry out the terms and conditions of said written instrument, and assure to the complainant the title to which she was entitled thereunder.

With reference to the original agreement as to the premises, the execution and delivery of the written instrument, its custody since and the contents thereof, the master reported :

" The master further finds that early in 1875, and prior to April 1, the said two sisters, Alta J. Clark and Ella T. Orr, agreed between themselves that their said father, the said Austin S. Whitcomb, should have·and enjoy the use and occupation of said parcel of land during the then remainder of his natural life ; and that the survivor of them, the said two sisters, should

take and have the whole of said land; and that they and their husbands joined in the execution of an instrument in writing, under seal and duly witnessed and acknowledged, to the end and purpose of carrying into effect the said agreement of said two sisters.    Said instrument was drafted by one Jonathan Randall, a justice of the peace, and a neighbor of said Whitcomb; that after the execution, as aforesaid, of said instrument, and in the presence of all the parties thereto, it was handed to said Randall to take home with him for safe keeping.    Later, and a short time before the death of said Randall, the said Alta J. Clark, with the knowledge and consent of her said sister, Ella T. Orr, and to carry out their mutual wish, went to said Randall's and took said paper or instrument in writing away, and later she, the said Alta J., sent it or took it to her home, a few miles away, where it remained (unless previously destroyed) until her death, in December, 1883.    The master further finds that on more than one occasion after the decease of his said wife, he, the said defendant Clark, upon inquiry for said instrument by said Whitcomb and request that it should be brought to him, acknowledged having the possession of it and promised to bring it to said Whitcomb.    That as far as disclosed by the evidence submitted to the master, said instrument has not been seen or its whereabouts known since the death of the said Alta J.    Notwithstanding the above findings as to the instrument, the defendant Clark, upon the hearing as well as by his answer, stoutly and persistently denied that any such or like instrument was ever made or entered into, and as stoutly denied that he ever had any knowledge of such transaction, or that he was ever inquired of as to any such paper or instrument, or that any demand was ever made upon him for it before the bringing of this action.

" The master is unable to find from the evidence submitted what the language of said instrument was, or whether or not it was or is sufficient in law or by its terms to convey the interest of the said Alta J. Clark in and to said parcel of land upon her decease, to the said Ella T. Orr, upon the decease of the said Alta J.; but the master finds that such was the intent and purpose of the parties, if the said Ella T. Orr survived her said sister."

The defendant excepted to the report of the master, for that:

1st.    The witnesses, Brown, Hulet and Orr were allowed to state the legal effect instead of the language of the instrument.

Orr *v.* Clark et al.

2d.   That Horace J. Orr, the father of the oratrix, and the husband of Ella T. Orr, was allowed to testify to the contract between his wife and her sister.

3d.   That the testimony of Jacob C. Andrews was excluded.

4th.   That the oratrix was allowed to testify to the contents of a letter written by her to defendant Clark, without the loss of the letter being shown.

Brown, who was one of the attesting witnesses, testified :

" I heard the biggest part of the paper read; I could tell something what it was about, not the whole of it.   I remember what the paper was about.   As near as I can recollect, the paper that I witnessed gave this property to Mr. Whitcomb during his life, and after his death to his living body heirs."

Miss Hulet, who was a domestic in the family at the time, and was "in and out" during the drafting and execution, said :

"I do not know when the paper was drawn ; Mr. Randall had it, and they were all signing it; do not remember as I heard the paper read; they said what they were going to do ; had heard that before ; I know that Alta and Ella signed; saw them have pens in their hands ; do not recollect as to others signing."

Being further asked:   " What did the parties say this paper was about ?" she replied :

"It was to give the property to uncle Austin during his life, and after his death to go to his legal heirs.   I heard some of the paper read ; I was in and out."

As to the contents of the paper, Orr testified :

" I can state the meaning of the paper as I understood it.   It was a life lease to father Whitcomb during his life, and to the heirs of the body of Mr. and Mrs. Whitcomb at their death."

Andrews was offered as a witness to show what Whitcomb said as to the ownership of the land while he was in possession.

The defendants introduced testimony tending to show that the acts of the oratrix had been inconsistent with her present claim of sole ownership, and, among other things, the defendant Clark testified as to the contents of a certain letter,

written by her to him, without producing the letter. On re-examination the oratrix was permitted to give her version of the contents of this same letter.

The oratrix had testified, upon cross-examination: "I knew or had been told that my grandmother had willed this land to my mother and Mrs. Clark." Upon re-examination she was allowed to state, in explanation of this, who told her and under what circumstances.

*H. A. Harman,* for the oratrix.

The defendant having the possession of the deed has denied its existence and failed to produce it. Hence the maxim, *omnia præsumunter in odium spoliatoris* applies. *King* v. *Countess of Arundell,* Hobart, 109 ; *Childrens* v. *Saxby,* 1 Vern. 207 ; *Hunt* v. *Matthews,* 1 Vern. 408 ; *Wardour* v. *Berisford,* 1 Vern. 452; *Sanson* v. *Rumsey,* 2 Vern. 561 ; *Dalston* v. *Coatesworth,* 1 Will. 731 ; *Hampden* v. *Hampden,* 1 Brown P. C. 250 ; *Armorie* v. *Delamirie,* 1 Str. 505; anon Ld. Ray. 731; *Downing* v. *Plate,* 90 Ill. 268.

The husband of Mrs. Orr was a competent witness. It is only when all the contracting parties on one side are dead that the statutory rule of exclusion prevails. *Read* v. *Sturtevant,* 40 Vt. 521 ; *Dawson* v. *Wait,* 41 Vt. 626 ; *Bradish* v. *Belknap,* 46 Vt. 1.

When a person is in possession of land all persons taking title adverse to him are charged with notice by such possession, and bound to make inquiry. *Shaw* v. *Beebe,* 35 Vt. 205 ; *Canfield* v. *Hard,* 58 Vt. 217.

There was a sufficient delivery. *Lindsay* v. *Lindsay,* 11 Vt. 621 ; *Morse* v. *Slason,* 13 Vt. 296.

*Geo. E. Lawrence,* for the defendants.

The defendant Hulet has good title. The possession of one co-tenant is the possession of both and is not adverse. Hence there was nothing in the possession of the oratrix to put this defendant upon his guard. *Owens* v. *Foster,* 13 Vt. 263 ;

Orr *v.* Clark et al.

*Buckminster* v. *Needham*, 22 Vt. 617 ; *Roberts* v. *Morgan*, 30 Vt. 319 ; *Leach* v. *Beatties*, 33 Vt. 195 ; *Holley* v. *Hawley*, 39 Vt. 525 ; 4 Kent, 366.

The report does not affirmatively find any fraud or misconduct on the part of the defendant Clark, and it will not be presumed. *Bradley* v. *Anderson*, 5 Vt. 152 ; *Willson* v. *Betts*, 4 Denio, 216 ; *Hatch* v. *Bagley*, 12 Cush. 27 ; *Bradish* v. *Bliss*, 35 Vt. 326 ; *Fire Assn.* v. *Bank*, 54 Vt. 657.

This suit is brought to enforce a specific contract, not to execute a contract. The question is, what was the written instrument ? not, what did the parties intend it should be ? Hence their purpose in making the deed is immaterial. *Brown* v. *Beebe*, 1 D. Chip. 228 ; *Bradley* v. *Anderson*, 5 Vt. 152 ; *Pingry* v. *Watkins*, 17 Vt. 379 ; *Abbott* v. *Choate*, 47 Vt. 53 ; Story Eq. Jur. s. 1531 ; *Taylor* v. *Gilman*, 25 Vt. 411 ; *Martin* v. *Berens*, 67 Penn. St. 459.

There was no sufficient delivery. *Moore* v. *Livingston*, 28 Barb. 543 ; *Stiles* v. *Brown*, 16 Vt. 563 ; *Powers* v. *Russell*, 13 Pick. 69 ; *Waugh* v. *Riley*, 8 Met. 290 ; *Young* v. *Gailbean*, 3 Wall. 636.

Signing and sealing are not evidence of a delivery. *Fisher* v. *Hall*, 41 N. Y. 416 ; *Jackson* v. *Phipps*, 12 John. 418 ; *Stilwell* v. *Hubbard*, 20 Wend. 44.

Neither is the record of a deed. *Walsh* v. *Vt. Mut. Ins. Co.*, 54 Vt. 351 ; *Dwinell* v. *Bliss*, 58 Vt. 353 ; *Maynard* v. *Maynard*, 10 Mass. 456 ; *Powers* v. *Russell*, 13 Pick. 69 ; *Elmore* v. *Marks*, 39 Vt. 538.

If the delivery is to a third person, it must clearly appear that such person holds it as the bailee of the grantee. *Elsey* v. *Metcalf*, 1 Denio, 323 ; *Powers* v. *Russell*, 13 Pick. 69 ; *Hawkes* v. *Pike*, 105 Mass. 560 ; *Fisher* v. *Hall*, 41 N. Y. 416.

The grantor must part permanently with the possession of the instrument. *Elmore* v. *Marks*, 39 Vt. 538 ; *Stiles* v. *Brown*, 16 Vt. 563 ; *Fisher* v. *Hall*, 41 N. Y. 416 ; *Stilwell* v. *Hubbard*, 20 Wend. 44 ; *Mills* v. *Gore*, 20 Pick. 28.

(10)

This deed was subject to the disposal of the grantor after its delivery to Randall.

The contents of a written instrument cannot be shown by showing what the parties intended to provide. *Morse* v. *Law*, 44 Vt. 561 ; *Smith* v. *Fitzgerald*, 59 Vt. 451 ; *Taylor* v. *Riggs*, 1 Pet. 589 ; *McBurney* v. *Cutler*, 18 Barb. 203 ; *Richardson* v. *Robbins*, 124 Mass. 105 ; *Edwards* v. *Noyes*, 65 N. Y. 125 ; *Metcalf* v. *Van Benthuysen*, 3 N. Y. 424.

Nor can a witness give his construction of the instrument. He must state the language. *Graham* v. *Chrystal*, 2 Keyes, 21 ; *Taylor* v. *Riggs*, 1 Pet. 591 ; *Metcalf* v. *Van Benthuysen*, 3 N. Y. 424 ; *Edwards* v. *Noyes*, 65 N. Y. 125 ; *McBurney* v. *Cutler*, 18 Barb. 203 ; *Richardson* v. *Robbins*, 124 Mass. 105.

And a vague and indistinct recollection is not enough. *Smith* v. *Fitzgerald*, 59 Vt. 451 ; *Morse* v. *Law*, 44 Vt. 561 ; *Daggett* v. *Johnson*, 49 Vt. 345 ; *Taylor* v. *Riggs*, 1 Pet. 591 ; *Richardson* v. *Robbins*, 124 Mass. 105 ; *Pollen* v. *LeRoy*, 30 N. Y. 549.

Orr was not a competent witness, the other party to the contract being dead. *Davis* v. *Windsor Savings Bank*, 48 Vt. 532 ; *Hollister* v. *Young*, 41 Vt. 156.

The opinion of the court was delivered by

TYLER, J. The case is this : The land in controversy was owned in fee by Alzina J. Whitcomb, who died intestate, December 15, 1874. Her husband, Austin S. Whitcomb, died May 14, 1887. Their only children and heirs were Alta J. Clark and Ella T. Orr, who, soon after their mother's decease, executed between themselves a written instrument by which they agreed that their father, the said Whitcomb, should have the occupation and use of said land during his life and at his decease the survivor of the sisters should take the fee. Alta J. was the wife of defendant Clark and Ella T. was the wife of Horace J. Orr and the mother of the oratrix. The husbands joined in the execution of the agreement, which was signed, sealed, witnessed, acknowledged and left for safe keeping with one Randall, a jus-

tice of the peace, who drew it up. Subsequently Mrs. Clark, with her sister's knowledge and consent, took the instrument from Randall's possession and kept it herself until her death in December, 1883. Her sister died in February, 1886. After the death of his wife, defendant Clark admitted to Whitcomb that he had the written instrument and promised to deliver it to him, but he never did deliver it, and in his answer in this suit and at the trial before the master he denied all knowledge of its execution and existence. No one but the defendant has seen the instrument since the death of Mrs. Clark. Whitcomb occupied the land until his death, and since that time it has been occupied by the oratrix, who is the sole heir of Mrs. Orr. The oratrix now claims title in fee to the land in the right of her mother, while defendant Hulet claims title to an undivided half thereof by virtue of a deed from defendant Clark, who claimed title in the right of his wife. The master reports that he is unable to find what the language of the instrument was and whether or not it was sufficient in law, upon Alta's decease, to convey her interest in the land to her sister ; but he does find that the instrument was made with that intent and purpose on the part of both sisters, in the event that Ella survived Alta. It also appears that defendant Clark, if he has not destroyed the writing, now withholds it, having repeatedly admitted, since his wife's decease, that it was in his possession.

The oratrix now invokes the application of the maxim, *Omnia præsumuntur contra spoliatorem* and cites, among other cases, *Armory* v. *De Lamirie*, 1 Stra. 505. In that case a person in a humble station in life, having found a jewel, took it to the shop of a goldsmith to inquire its value, who, having got the jewel into his possession under pretense of weighing it, took out the stone, and on the finder refusing to accept a small sum for it, returned him the empty socket. An action of trover having been brought to recover damages for the detention of the stone, the jury were directed that, unless the defendant produced the jewel and thereby showed it not to be of the finest water, they should presume the strongest against him and make

the value of the best jewel that would fit the socket the measure of their damages.

This maxim has often been applied in cases where written instruments of evidence have been destroyed or suppressed. This not only raises a presumption that the evidence suppressed would, if produced, militate against the party suppressing it, but procures more ready admission to the evidence of the opposite side. 2 Best Ev. 412. " If," says Ld. Ch. Justice Holt, in 1 Ld. Raym. 731, " a man destroys a thing that is designed to be evidence against himself, a small matter will supply."

In *Hunt* v. *Matthews*, 1 Vern. 408, a widow, before her marriage with her second husband, assigned over the greater part of her estate to trustees, in trust for her children by her first husband. The husband suppressing the deed, was decreed to pay £800, the sum proved to have been mentioned in the deed as the value of the goods. See also, *Wardour* v. *Berisford*, 1 Vern. 452, and *Dalston* v. *Coatsworth*, 1 P. Wms. 731. In *Rex* v. *the Countess of Arundell*, Hob. 109, the king claimed title to land by an attainder of high treason. On its being shown that the deeds whereby the estate came to the party attainted were not extant, but were very strongly suspected to have been suppressed by some one under whom the defendant claimed, a decree was made that the crown should hold and enjoy the land until the defendant should produce the deeds and the court thereupon take further consideration and order.

Mr. Best seriously questions whether this maxim has not been carried too far and quotes Lord Eldon in *Barker* v. *Ray*, 2 Russ. 72, who said :  *  *  *  " The jurisdiction of the court in matters of spoliation has gone a long way.  *  *  *  To say that if you once prove spoliation, you will take it for granted that the contents of the thing spoliated are what they have been alleged to be, may be, in a great many instances, going a great length."

In this case it is not necessary to go further than was held in *Life & Fire Ins. Co.* v. *Mechanics Fire Ins. Co.*, 7 Wend. 31, " that the refusal to produce books or papers upon notice given,

does not warrant the presumption that if produced they would show the facts to be as alleged by the party giving notice; the only effect of such refusal is, that parol evidence of their contents may be given; and if such secondary evidence be imperfect, vague and uncertain as to dates, sums, etc., every intendment and presumption shall be against the party who might remove all doubt by producing the higher evidence. Some general evidence of such parts of their contents as are applicable to the case must first be given before any foundation is laid for any inference or intendment on account of their non-production." *Downing* v. *Plate*, 90 Ill. 268, is also a case in point.

It may fairly be presumed that, when a witness refuses to explain what he can explain, the explanation would be to his prejudice. This presumption will not alone suffice to establish the contents of the suppressed document, but may be considered in connection with secondary evidence. Therefore, if the defendants' exceptions are not sustainable as to the admission and exclusion of evidence by the master, the oratrix is entitled to the relief prayed for.

The testimony of the witness Brown was properly admitted. It did not give legal construction to the written instrument but merely stated its contents.

As the instrument was not produced, it was competent for the oratrix to show by oral evidence the purpose for which the parties thereto said it was made and what they said it was about at the time of its execution. In this view the testimony of the witness Melissa Hulet was properly admitted as the best obtainable evidence of the contents of the paper.

No rule of law excluded Horace J. Orr from testifying. His wife was not a party to this suit. He and defendant Clark were parties with their wives to the written agreement, but they are both alive and competent witnesses as to the contents of the agreement. *Dawson* v. *Wait*, 41 Vt. 626.

The question propounded to the witness Orr was a proper one. It is true he began his answer improperly by saying he could

state the meaning of the paper, but what he in fact said was no more than a recitation of its language.

The testimony of Andrews as to the admissions of Whitcomb was properly excluded. Whitcomb occupied the land after his wife's decease, with his daughters' consent. He was a tenant by courtesy without their consent. What he supposed about the title while he was thus occupying could not give construction to the writing or affect the title of his daughters or of their legal representatives.

Defendant Clark had given evidence relative to the contents of a letter written by the oratrix to him, and what she testified was in proper rebuttal of his evidence upon that subject. What she said about the paper seems to have been in explanation of what was partly brought out in her cross-examination. She did not state the contents of the paper, but merely said she was told by her mother that there was one.

Defendant Hulet took his deed of the land March 10, 1888, after the death of the two sisters and after the termination of the life tenancy of their father; therefore the law of co-tenancy seems to have no application to the case. The oratrix was then in actual possession of the land, and it was incumbent on the defendant to inquire as to the character of the title under which she was in such occupation. He was constructively charged with notice of all the facts that he might have learned by reasonable inquiry. *Shaw* v. *Beebe*, 35 Vt. 205; *Canfield* v. *Hard*, 58 Vt. 217.

While a delivery is essential to the validity of a deed, it is not necessary that there should be an actual manual delivery. If it is so disposed of as to evince clearly the intention of the parties that it should take effect as a conveyance, it is a sufficient delivery. *Conlan* v. *Grace*, 36 Minn. 276 (30 N. W. 880); 3 Wash. Real Prop. 330.

This writing was not in the usual form of a deed of conveyance. It was, as the master finds, a writing declarative of an agreement made between Mrs. Clark and Mrs. Orr, that the sur-

vivor of them should have the entire land in fee, and was framed for the purpose of carrying that agreement into effect. That agreement was never revoked, but stands as evidence of the wishes of the parties thereto in respect to this land, and it should have the effect of a conveyance. The delivery to Randall, in the circumstances disclosed, was sufficient.

The *pro forma* decree is reversed and cause remanded under a mandate that the temporary injunction be made perpetual, and that the defendants make such conveyance of the premises in question to the oratrix as the Court of Chancery may adjudge necessary to carry out the terms and conditions of the written agreement.

ROWELL, J., being indisposed, did not sit.